**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JACK SAVAGE,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORP., TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, LLC, and EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>Defendants. | ) | No. 2:26-cv-00739-RJC<br><br>Judge Robert J. Colville |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court is a Motion for Partial Dismissal of Plaintiff's Amended Complaint (ECF No. 33), filed by Defendant, Capital One, N.A.[1] (hereinafter "Capital One"). The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over any state-law claims pursuant to 28 U.S.C. § 1367. Capital One seeks to dismiss the Pennsylvania law claims brought by Plaintiff at Counts III and IV of his Complaint. Because Plaintiff has failed to allege that he suffered an ascertainable loss, a required element of the Pennsylvania claims that he seeks to state, Capital One's Motion is granted.

## I. Background & Procedural History

On May 1, 2026, this federal lawsuit commenced upon the filing of Plaintiff's Complaint. ECF No. 1. Plaintiff subsequently amended his Complaint on May 7, and his First Amended Complaint remains the operative complaint in this matter. ECF No. 4. Plaintiff brings claims

[1] Capital One advises that Plaintiff, in this case's caption, has improperly identified them as "Capital One Financial Corporation."

under both federal law and Pennsylvania law to redress injuries that he allegedly suffered after becoming a victim of identify fraud in 2021. *Id.* ¶ 17. Specifically, Plaintiff alleges that a Discover credit account was fraudulently opened in Plaintiff's name with Defendant Capital One, that more than $11,000 in unpaid charges accrued on the account, and that Capital One wrongfully reported to consumer reporting agencies that Plaintiff owed that debt. *Id.* ¶¶ 17, 19, 25. After Plaintiff learned of the fraudulent charges, he reported the apparent identity theft to the FTC and also sent written disputes regarding the alleged debt to each Defendant. *Id.* ¶¶ 27-28. Plaintiff alleges that Capital One responded and indicated that their investigation had revealed that the account opened in Plaintiff's name was accurate. *Id.* ¶ 30.

Though he has raised claims against both Capital One and three consumer reporting agencies, only Capital One has moved for dismissal. ECF No. 33. Indeed, Plaintiff has reported settlements with the remaining Defendants. *See* ECF Nos. 35, 37.

Capital One's Motion to Dismiss seeks only partial dismissal of Plaintiff's claims. In his First Amended Complaint, Plaintiff brings three claims against Defendant Capital One: (1) a claim under § 1681s-2(b) of the federal Fair Credit Reporting Act (FCRA); (2) a claim for a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL); and (3) a claim for a violation of the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA). *See* Am. Compl. at Counts I, III, IV. Capital One does not seek dismissal of Plaintiff's federal law claim but argues that the claims brought under Pennsylvania law are both preempted by federal law and unsupported by Plaintiff's allegations. *See* ECF No. 34. Plaintiff filed a brief opposing Capital One's motion. ECF No. 36. However, Capital One did not file a Reply brief in further support of its Motion. Such a Reply was permitted by the rules of this

Court, but the time for filing has now passed. The Court therefore considers the Motion ripe for disposition.

**II. Legal Standard**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The Third Circuit explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

## III. Discussion

Capital One moved for partial dismissal of Plaintiff's First Amended Complaint, arguing that the claims brought under Pennsylvania law were preempted by federal law. Specifically, Capital One contends that application of the Pennsylvania UTPCPL is explicitly preempted by the federal FCRA. Alternatively, Capital One argues that Plaintiff's UTPCPL claim independently fails as a matter of law. Because a plaintiff cannot bring a claim under Pennsylvania's FCEUA if they cannot state a claim under the UTPCPL, Capital One argues that Plaintiff's FCEUA claim must also be dismissed. Plaintiff responds that preemption is not required here and by arguing that he has adequately pleaded the facts required to support his claims under Pennsylvania law. The Court agrees that, at least to the extent that they are predicated upon conduct that is not specifically regulated by the federal FCRA, Plaintiff's state

law claims are not preempted. However, Plaintiff's claims at these counts nonetheless are dismissed, as Plaintiff has failed to allege the facts necessary to support his claims.

**A. Preemption**

Capital One argues that Plaintiff's claims brought under Pennsylvania law at Counts III and IV fail as a matter of law because they are preempted by the federal FCRA. In support, it correctly explains that "[m]ultiple district courts within the Third Circuit have . . . found that Section 1681t(b)(1)(F) preempts both state statutory and common law claims against furnishers of information acting under Section 1681s-2." *Havassy v. Mercedes-Benz Fin. Servs. USA, LLC*, 432 F. Supp. 3d 543, 547 (E.D. Pa. 2020); *see also* Br. in Supp. at 3-4. Several courts within this circuit have held that claims stated under the same Pennsylvania statutes relied upon by Plaintiff were barred by FCRA preemption. *See, e.g.*, *Grossman v. Trans Union, LLC*, 992 F. Supp. 2d 495 (E.D. Pa. 2014); *Vullings v. Trans Union, LLC*, 115 F. Supp. 3d 538 (E.D. Pa. 2015); *Goins v. MetLife Home Loans*, No. 12-CV-6639, 2014 WL 5431154 (E.D. Pa. Oct. 24, 2014).

However, as pointed out in Plaintiff's opposition, it is not true that Section 1681t(b)(1)(F) preempts *all* state statutory and common law claims against furnishers of consumer information. Rather, the express preemption provided by the FCRA is of a more limited scope. And indeed, there is at least one instance of a court within this Circuit recognizing that more limited scope and finding state law not preempted by FCRA Section 1681s-2. *See Consumer Data Indus. Ass'n v. Platkin*, No. 19-cv-19054, 2024 WL 1299256 (D.N.J. Mar. 27, 2024) ("*CDIA*"). Plaintiff argues that, as explained in *CDIA*, Section 1681s-2 "only preempts state consumer protection laws to the extent the state claims are predicated on acts and omissions prohibited under that provision." Br. in Opp. at 4. He thus explains that the applicable FCRA provision "only relates to the furnishing of credit information to consumer reporting agencies and only

recognizes a claim after the consumer disputed the debt to the CRA's [sic]." Br. in Opp. at 5. Plaintiff contends that he has stated a claim for other conduct reached by Pennsylvania state law— "the act of attempting to collect the debt from Plaintiff after Plaintiff directly disputed the debt to Capital One"—and that therefore his claim is not preempted.[2] *Id.*

Federal preemption may take one of three forms: express preemption, field preemption, and conflict preemption. At issue here is express preemption, in which "Congress, through a statute's express language, declares its intent to displace state law." *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010). Capital One contends that the federal FCRA expressly preempts Plaintiff's state law claims.

Any preemption inquiry must start with two guiding principles. First, congressional intent is the "ultimate touchpoint" when determining whether a given federal statute should be ascribed preemptive effect. *CDIA*, 2024 WL 1299256, at *16 (quoting *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 287 (3d Cir. 2020)). Second there is a "basic assumption that Congress did not intend to displace state law." *Id.* (quoting *Navient Corp.*, 967 F.3d at 288). In the case of express preemption, there is no presumption against preemption, but courts must "focus on the plain wording of the [the statute]" and apply only the scope of preemption intended by Congress. *Id.* (quoting *Puerto Rico v. Franklin California Tax-Free Tr.*, 579 U.S. 115, 125 (2016)).

As relevant here, the federal FCRA explains that "no requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681-s of this title, relating to the responsibilities of persons who furnish information to

[2] The Court notes that though Plaintiff says that "Capital One's actions of collecting and report [sic] a debt it knew or should have known Plaintiff did not owe, constitutes 'unfair or deceptive acts or practices,'" Compl. ¶ 56, he alleges no specific facts with respect to that debt collection and any unfair tactics employed by Capital One. Thus, the factual support alleged for this theory of liability appears scant at best. However, as discussed *infra*, regardless of the result of the preemption inquiry, Plaintiff's claims fail because he has failed to allege support for their required elements.

consumer reporting agencies." 15 U.S.C. § 1681-t(b)(1)(F). To give no more preemptive effect than that intended by Congress, the Second Circuit has explained that this provision "must be read to preempt only those claims against furnishers that are '*with respect to*' the subject matter regulated under § 1681s-2." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 446 (2d Cir. 2015) (emphasis added).[3]

Section 1681s-2 sets forth duties and responsibilities for those who furnish information about consumers to consumer reporting agencies. *See* 15 U.S.C. § 1681s-2. Accordingly, the Second Circuit in *Galper* held that "§ 1681t(b)(1)(F) preempts only those claims that concern a furnisher's responsibilities" and not "state law claims against a defendant who happens to be a furnisher of information to a consumer reporting agency within the meaning of the FCRA if the claims against the defendant do not also concern that defendant's legal responsibilities as a furnisher of information under the FCRA." 802 F.3d at 446. The Court rejected a broader reading of the preemption provision, explaining:

> We are not persuaded by Chase's argument that § 1681t(b)(1)(F) preempts all claims "relating to the responsibilities" of furnishers in any way, and regardless of the capacity in which the furnisher is acting. . . If Congress had intended to preempt claims that relate in any way to someone furnishing information to a consumer reporting agency, it could easily have drafted the statute to say that state laws "relating to the furnishing of information to consumer reporting agencies are preempted." But this it did not do. Congress opted instead to use language that focuses more narrowly on the preemption of laws that regulate the *responsibilities* of persons who furnish information to consumer reporting agencies.

*Id.* at 447. So, following *Galper*, in the Second Circuit, the FCRA explicitly preempts state claims, but, with respect to Section 1681s-2, only to the extent that the claims are "based on allegations of erroneous or otherwise improper furnishing" of consumer information. *Id.* at 449 (citing *MacPherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47-48 (2d Cir. 2011)).

---

[3] Though *Galper* is out of circuit, the Court finds it instructive here. Moreover, the Court is not aware of, and the parties have not cited to, Third Circuit guidance regarding the preemptive effect of 15 U.S.C. § 1681-t(b)(1)(F).

Finding *Galper* instructive, the court in *CDIA* emphasized that the FCRA preempted only "state laws 'with respect to' the '*specific* provisions of' the FCRA." 2024 WL 1299256, at *18. (quoting 15 U.S.C. § 1681t(b)(5)). Therefore, a New Jersey state statute that required consumer reporting agencies to make disclosures available to consumers in certain languages was not preempted by the FCRA because the FCRA set no specific requirements regarding the language to be used for consumer disclosures. *Id.* The court explained that the FCRA does not require preemption of state law merely because the state law generally relates to the same subject as the FCRA. Rather, state law is preempted only to the extent it imposes requirements or prohibitions touching the FCRA's specific provisions. *Id.* (citing 15 U.S.C. § 1681t(b)(5)).

Though they are not binding, the Court finds the analysis from the Second Circuit in *Galper* and the District of New Jersey in *CDIA* instructive. Here, Capital One argues that Plaintiff's claims are preempted because the Pennsylvania state laws set requirements with respect to the specific provisions at Section 1681s-2, which, as described *supra*, sets forth duties and responsibilities related to the provision of consumer information to reporting agencies. Plaintiff responds that his claims brought under Pennsylvania law are not preempted because they do not relate only to the furnishing of consumer information to reporting agencies. Rather, Plaintiff contends that his UTPCPL claim is based upon: (1) Capital One allowing a credit card to be fraudulently opened in Plaintiff's name; (2) Capital One insisting that Plaintiff owed a debt he did not owe; and (3) Capital One attempting to collect on that debt. Br. in Opp. at 5-6. He contends that debt collection activity is not reached by FCRA preemption. Capital One does not respond to this argument.

The conduct which Plaintiff says he intends to remedy through these claims is plainly not related to the furnishing of consumer information to credit reporting agencies. Therefore,

Plaintiff has plausibly argued that his claims are based on conduct not reached by the FCRA. For purposes of this analysis, the Court need not consider whether the conduct alleged by Plaintiff is indeed compensable under the statutes upon which he relies. For FCRA preemption purposes, what is relevant is that Plaintiff seeks remedies under Pennsylvania state law for conduct that is unrelated to that which is covered by the FCRA. State laws reaching such conduct are not preempted. And moreover, to the extent that Plaintiff's contentions lack merit, Capital One had the opportunity to file a reply brief and elected not to. The Court will not construct counterarguments that Capital One chose not to make in reply. *See Tannous v. Cabrini Univ.*, 702 F. Supp. 3d 317, 320 (E.D. Pa. 2020) ("[I]t is not the Court's role, 'especially in a counseled civil case, to create arguments for someone who has not made them or to assemble them from assorted hints and references scattered throughout the brief.'") (quoting *Yeomalakis v. F.D.I.C.*, 562 F.3d 56, 61 (1st Cir. 2009)). Therefore, the Court will not find that Plaintiff's claims are preempted by the federal FCRA.

**B. Viability of UTPCPL Claim (Count III)**

Capital One next argues that, if it is not preempted, Plaintiff's claim pursuant to the Pennsylvania UTPCPL at Count III should be dismissed because Plaintiff has failed to allege the requisite facts to support such a claim. Br. in Supp. at 4-7. According to Capital One, Plaintiff's UTPCPL claim must fail for several reasons. First, Capital One contends that Plaintiff lacks the standing required by statute because Plaintiff did not allege that he ever purchased a good or service from Capital One. Br. in Supp. at 4-5. Further, Capital One argues that Plaintiff's claim must fail because, even if he had standing, a UTPCPL claim must be supported by allegations of unlawful conduct related to the purchased good or service and some sort resulting ascertainable

loss of money or property. Br. in Supp. at 5-7. These possible bases for dismissal of Plaintiff's claim are addressed in turn.

**1. Whether Plaintiff Has Standing**

Capital One first contends that Plaintiff's UTPCPL claim must fail because the UTPCPL only permits private actions from those who "purchase[ed] . . . goods or services . . . and thereby suffer[ed] any ascertainable loss of money or property." 73 P.S. § 201-9.2. Because the First Amended Complaint does not allege that Plaintiff purchased a good or service from Capital One or Discover, Capital One argues that it is not liable to Plaintiff under this statute.

Indeed, Plaintiff does not allege in the First Amended Complaint that he purchased a good or service from Capital One or Discover. In fact, Plaintiff goes as far as to say that he affirmatively has *not* been a customer of Discover for at least the last decade. *See* Am. Compl. ¶ 24. However, Plaintiff argues that he nonetheless has standing to bring this challenge, as Pennsylvania courts have explained that UTPCPL should be liberally construed in favor of its consumer-protection goal. Br. in Opp. at 4-5. To that end, Plaintiff argues that courts applying this provision have not required privity between a plaintiff and defendant. He further argues that his claim is appropriate because Pennsylvania law specifically explains that the UTPCPL reaches debt collection activity.

"The UTPCPL is Pennsylvania's consumer protection law," and its purpose "is to protect the public from unfair or deceptive business practices." *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151 (Pa. 2012); *see also Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 56 (3d Cir. 1992) (explaining that the statute's purpose is to "'place on more equal terms seller and consumer,' to remedy 'the unequal bargaining power of opposing forces in the marketplace,' and to 'ensure the fairness of market transactions.'") (quoting *Commonwealth v.*

*Monumental Props., Inc.*, 329 A.2d 812, 816 (Pa. 1974)). The Pennsylvania Supreme Court has instructed courts to construe the UTPCPL liberally toward that purpose. *Bennett*, 40 A.3d at 151. The private right of action provided by the UTPCPL explains:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private right of action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 P.S. § 201-9.2(a). Thus, "the statute unambiguously permits only persons who have purchased or leased goods or services to sue," and it does not "create a cause of action for those not involved in a sale or lease." *Katz*, 972 F.2d at 55; *Schwarzwaelder v. Fox*, 895 A.2d 614, 620 (Pa. 2006) (explaining that the plaintiff who "purchased nothing from [defendant] [] cannot claim an attendant cause of action under the UTPCPL").

The UTPCPL does not define "purchaser," but the Pennsylvania Superior Court and the Third Circuit have held that the statute's cause of action does not require strict privity. *See Spiro v. Prudential Relocation, Inc.*, No. 1:06-cv-834, 2007 WL 675426, at *5 (M.D. Pa. Mar. 1, 2007) (citing *Valley Forge Towers S. Condominium v. Ron-Ike Foam Insulators, Inc.* 574 A.2d 641, 647 (Pa. Super. Ct. 1990)); *see also Katz*, 972 F.2d at 56. Pursuant to those holdings, "liability under the CPL [has been] extended to 'those in privity, those specifically intended to rely upon the fraudulent conduct, and those whose reasonable reliance was specially foreseeable.'" *Katz*, 972 F.2d at 56 (quoting *Valley Forge Towers*, 574 A.2d at 647). That said, though "strict privity is not always an element of the private cause of action," courts have not "extended the private cause of action to a plaintiff lacking any commercial dealings with the defendant." *Id.* at 57.

In *Katz*, the plaintiff had been a passenger in a vehicle that was involved in a car accident, and he subsequently filed a negligence action against the vehicle's driver. *Id.* at 54.

The defendant driver owned both liability and excess liability insurance policies. *Id.* Defendants allegedly deceived plaintiff by failing to disclose the existence of the excess liability policy, thereby inducing him to settle for the policy limit of the liability policy. *Id.* Though he "did not purchase or lease goods or services" from any defendant, plaintiff then brought suit against the driver and both insurers under the CPL. *Id.* at 54, 56. The Third Circuit held that plaintiff lacked standing because, regardless of any deceptive or unfair practices, he had "conducted no business whatsoever with" defendants, and further had not been induced "to buy or conduct some other market transaction." *Id.* at 57. Therefore, plaintiff lacked standing, and summary judgment for the insurer defendant was affirmed.

In recognizing UTPCPL claims, courts ordinarily look to see whether plaintiffs had "engaged in commercial dealing with [] defendant[s]." *Spiro* 2007 WL 675426, at *5 (plaintiff contracted with defendant for property management services).[4] This case, in which there are no commercial dealings between Plaintiff and Capital One, thus closely resembles *Katz*. Plaintiff tells us that at no point in the last ten years has he held or used one of Capital One's products. Further, he does not allege that he was induced to enter into any sort of market transaction by Capital One's alleged misconduct. Even construing this record liberally, Plaintiff simply does not appear to be a "purchaser" with standing for purposes of a UTPCPL claim.

Plaintiff argues that his UTPCPL claim is nonetheless properly stated, as the Pennsylvania Fair Credit Extension Uniformity Act provides that "[i]f a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a

[4] The Court acknowledges that Plaintiff has cited one case, *Montgomery v. Midland Credit Mgmt., Inc.*, No. 12-cv-1244, 2014 WL 3563198 (E.D. Pa. June 19, 2014), in which UTPCPL and FCEUA claims survived summary judgment on similar facts to those alleged here. However, the court's analysis in *Montgomery* includes no discussion of standing for or the elements required to support those state law claims. Rather, the defendants in *Montgomery* argued that the conduct alleged could not support the plaintiff's federal FDCPA claims, and conceded that if the federal claims were supported, then the state claims were as well. *Montgomery* is of course not binding, and the Court elects not to rely upon it here, given that the opinion did not analyze the specific questions now presented.

violation of the act of December 17, 1968 (P.L. 1224, No. 387), known as the Unfair Trade Practices and Consumer Protection Law." 73 Pa. Stat. Ann. § 2270.5(a). Based on this Court's review of the precedents cited by the parties, it is not clear whether a purported debtor is *per se* considered a "purchaser" for purposes of UTPCPL standing when they are subjected to deceptive or unfair debt collection practices, or if rather the debtor must independently demonstrate their standing as a purchaser. But in any event, even assuming *arguendo* that Plaintiff, as a purported debtor, has standing to bring his UTPCPL claim, his claim fails because he has failed to allege that he suffered an ascertainable loss attributable to the allegedly wrongful conduct.

**2. Whether Plaintiff Alleged Adequate Support for a UTPCPL Claim**

"To state a UTPCPL claim, a plaintiff must allege that he (1) suffered 'an ascertainable loss as a result of the defendant's prohibited action;' and (2) 'justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance.'" *McPartland v. Chase Manhattan Bank USA, N.A.*, No. 1:22-cv-284, 2022 WL 1810979, at *3 (M.D. Pa. June 2, 2022) (quoting *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008)). To establish an "ascertainable loss," the plaintiff must be able to "point to money or property that he would have had but for the defendant's fraudulent actions"; allegations regarding speculative damages will not suffice. *Id.* (quoting *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 360 (E.D. Pa. 2013)). Ascertainable loss cannot be established through allegations regarding damage to consumer credit rating or regarding a reported inability to take advantage of more favorable interest rates. *Id.* In sum, "an actual loss of money or property must have occurred to state a cognizable UTPCPL claim." *Benner*, 917 F. Supp. 2d at 360; *see also Solarchick ex rel. Solarchick v. Metro. Life Ins. Co.*, 430 F. Supp. 2d 511 (W.D. Pa. 2006) ("A party cannot lose what she does not or will not have, and cannot be compensated for a loss not suffered.").

Plaintiff here contends that he suffered an ascertainable loss because he was unable to finance a new vehicle according to more favorable terms that he believes would have been available were it not for the events giving rise to this case. Br. in Opp. at 11. Plaintiff further contends that he abstained from taking on a loan to help pay for his son's education, and that he "has otherwise abstained from seeking loans or credit opportunities." *Id.* While this may be so, these speculative damages are not the sort of ascertainable loss that is required to support a UTPCPL claim. *Grimaldi v. Bank of Am.,* No. 3:12-cv-2345, 2013 WL 1050549, at *5 (M.D. Pa. Mar. 14, 2013) (agreeing "that harm to Plaintiff's credit rating and infringement on a hypothetical 'attempt to refinance her home'" are not ascertainable losses under the UTPCPL); *see also Benner*, 917 F. Supp. 2d at 360 (charged fee that defendant insisted was owed but which remained unpaid was not an ascertainable loss suffered by plaintiff); *Grimes v. Enterprise Leasing Co. of Phila., LLC*, 105 A.3d 1188, 1194 (Pa. 2014) (noting that courts have recognized UTPCPL claims where plaintiffs have "alleged a specific loss of money"). Therefore, notwithstanding the potential issues with respect to preemption and UTPCPL standing, Plaintiff's UTPCPL claim fails as pleaded because Plaintiff has not alleged an ascertainable loss of money or property. His claim at Count III is dismissed.

**C. Viability of FCEUA Claim (Count IV)**

Finally, Capital One argues that Plaintiff's claim under the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA) at Count IV should be dismissed because the statute does not include a private right of action, and the UTPCPL instead serves as the vehicle for such actions. Because Plaintiff has not stated a UTPCPL claim, Capital One argues that his claim at Count IV thus must also fail. Br. in Supp. at 8-9. Plaintiff responds by contending that Capital

One, through its debt collection activities, violated the FCEUA, and that that violation is a *per se* UTPCPL violation. Br. in Opp. at 9.

Because "the FCEUA does not provide individuals with the right to institute private causes of action for violations," the remedial provision of the UTPCPL is used instead, and accordingly, "the law governing UTPCPL claims also governs Plaintiff's FCEUA claim in this case." *Benner*, 917 F. Supp. 2d at 359. As such, to support a claim brought under the FCEUA, the plaintiff must still demonstrate that they have suffered an ascertainable loss of money or property resulting from the violation. *Walkup v. Santander Bank, N.A.*, 147 F. Supp. 3d 349, 358 (E.D. Pa. 2015).

Plaintiff is not wrong in contending that an FCEUA violation constitutes a *per se* UTPCPL violation. 73 Pa. Stat. Ann. § 2270.5(a); *Magness v. Walled Lake Credit Bureau, LLC*, No. CIV.A. 12-6586, 2013 WL 1311093, at *4 (E.D. Pa. Apr. 1, 2013). But Plaintiff's argument misses the mark. Even if Plaintiff has successfully alleged that Capital One violated the requirements of the FCEUA and by extension the UTPCPL, the fact remains that the FCEUA does not include a private right of action, and moreover, that Plaintiff has failed to supply the factual support required for the UTPCPL's private right of action. Therefore, his claim at Count IV is also dismissed.

## IV. Conclusion

For the reasons discussed herein, Capital One's Partial Motion to Dismiss Plaintiff's Amended Complaint is granted. Plaintiff's claims at Counts III and IV of the Amended Complaint are dismissed. Though the Court presently perceives no amendment that is likely to cure the deficiencies in Plaintiff's Complaint, dismissal is without prejudice to subsequent amendment if appropriate. An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: November 19, 2026

cc: All counsel of record